UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| SUNPREET SINGH,<br><br>　　　　　　Petitioner,<br><br>　　v.<br><br>PAM BONDI et al.,<br><br>　　　　　　Respondents. | CASE NO. 2:26-cv-00197-JHC<br><br>ORDER |

# I

## INTRODUCTION

This matter comes before the Court on Petitioner Sunpreet Singh's Petition for Writ of Habeas Corpus. Dkt. # 1. The Court has reviewed the materials filed in support of and in opposition to the Petition, the rest of the record, and the governing law. Being fully advised, for the reasons below, the Court GRANTS the Petition. Dkt. # 1.

# II

## BACKGROUND

Petitioner is an approximately 19-year-old non-U.S. citizen. Dkt. # 11-3 at 2. He is a native and citizen of India. *Id*. Petitioner entered the U.S. on or around April 8, 2024, and was immediately detained and found to be inadmissible under Section 212(a)(6)(A)(i) of the

ORDER - 1

Immigration and Nationality Act.  Dkt. # 10 at 1; Dkt # 11-3 at 3.  Because Petitioner is under the age of 21, a California Superior Court has made a special immigrant juvenile finding and has appointed him a legal guardian.  Dkt. # 1-4 at 1-9.  With the aid of counsel, he has presented this finding to the Department of Homeland Security (DHS).  Dkt. # 1-4.  It is unclear if Petitioner has received a response from DHS, and Respondents make no mention of this finding.  *See generally* Dkt. ## 9-11.

These facts are undisputed: On April 9, 2024, Petitioner was issued a Notice to Appear under 8 U.S.C. § 1229(a), but after it was determined he posed no danger or flight risk, he was shortly after released from detention under 8 U.S.C. 1226(a) on an order of recognizance (OREC).  Dkt. # 1 at 4; Dkt. # 11-2 at 2.  Petitioner has maintained compliance with his required ICE check-ins, has complied with the conditions of his release, and has no criminal record.[1]  Dkt. # 1 at 3-5; *see generally* Dkt. 10.

After release and with the aid of counsel, he pursued asylum, withholding of removal, and protection under the Convention Against Torture.  Dkt. # 1-3; Dkt. # 10 at 3.  On November 4, 2025, Petitioner's final merits hearing on his asylum case was scheduled for January 2, 2026, before the immigration court in New York.  Dkt. # 10 at 3.  It is unclear whether Petitioner, or counsel representing him in his asylum proceeding, received notice of this hearing.  *See generally* Dkt. ## 1, 10, 11.

---

[1] Respondents state that Petitioner did not update his address as required by his OREC.  Dkt. # 9 at 4; Dkt. # 11-2 at 2.  Respondents do not argue the legal significance of this fact and Petitioner contest it.  Dkt. # 9 at 4; Dkt. # 1 at 6.  Regardless, the government does not explain what address they have on file, and so it is difficult to determine whether they have the correct address.  Petitioner's file in one instance contains a New York address and his immigration proceedings were originally meant to proceed in New York, but his OREC and special immigration juvenile findings both occurred in California.  Dkt. # 11-2; Dkt. # 1-4.  The government was aware Petitioner was in California.  Respondents suggest that Petitioner should have updated his address to Oregon, but Petitioner has stated that he was only traveling to Oregon short-term to visit a friend.  Dkt. # 10 at 2; Dkt. # 1 at 3.  Besides the confusion with the address, Petitioner was active in his immigration proceedings and had complied with his OREC check-ins.  *Id.*

ORDER - 2

On November 5, 2025, while visiting a friend, Petitioner was stopped in Albany, Oregon, arrested by Immigration and Customs Enforcement (ICE), and taken into custody.[2] Dkt. # 1 at 3-4; Dkt. # 11-3.  The ICE office concluded "there [was] probable cause that SINGH is removable under Section 212(1)(6)(A)(i) of the Immigration and Nationality Act." Dkt. # 11-3 at 4.  Petitioner did not receive notice or an opportunity to be heard prior to his re-detention. Dkt. # 1 at 4-5; Dkt. # 9 at 4.  Petitioner was transferred to the Northwest ICE Processing Center in Tacoma, Washington, and his immigration proceedings were transferred to the Tacoma Immigration Court.  Dkt. # 10.

While Petitioner is represented by counsel in his immigration proceedings, he has filed this Petition pro se.  Dkt. # 9 at 4; *see generally* Dkt. # 1.

### III

#### DISCUSSION

Federal district courts have the authority to grant a writ of habeas corpus if a person "is in custody in violation of the Constitution or laws or treaties of the United States[.]" 28 U.S.C. § 2241 (a), (c).  "The [habeas] petitioner carries the burden of proving by a preponderance of the evidence that [they are] entitled to habeas relief."  *Davis v. Woodford*, 384 F.3d 628, 638 (9th Cir. 2004).

**A.    Due Process**

Petitioner invokes the Due Process Clause of the Fifth Amendment to the United States Constitution, which prohibits the federal government from depriving any person "of life liberty, or property, without due process of law[.]"  The right to due process "applies to all 'persons'

---

[2] At one point, Petitioner states this occurred on December 11, 2025, but at other points references the event occurring on November 5, 2025.  Dkt. # 1 at 3, 5.  Because the record shows and Respondents claim this event occurred on November 5, 2025, (*see generally* Dkt. ## 1, 9, 10, 11) the Court finds that it occurred that day.

within the United States, including [non-citizens], whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001) (collecting cases).

"Procedural due process imposes constraints on governmental decisions which deprive individuals of 'liberty' or 'property' interests within the meaning of the Due Process Clause of the Fifth or Fourteenth Amendment." *Mathews v. Eldridge*, 424 U.S. 319, 332 (1976). "The fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'" *Id*. at 333 (quoting *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965)). Determining whether a governmental action violates due process:

> [G]enerally requires consideration of three distinct factors: First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Id.* at 335.

The traditional test for evaluating due process claims established by *Mathews*, 424 U.S. 319 (1976), "can and must account for the heightened governmental interest in the immigration detention context." *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1206 (9th Cir. 2022).[3]

---

[3] In *Rodriguez Diaz*, the Ninth Circuit applied the *Mathews* test, but "assume[d] without deciding" that *Mathews* applies in the context of immigration detention. 53 F.4th at 1207. In applying the *Mathews* test, the Court recognized that other circuits have applied the *Mathews* test to due process challenges to immigration proceedings. *Id*. at 1206. The Ninth Circuit has "regularly applied *Mathews* to due process challenges to removal proceedings." *Id*. And the Supreme Court has applied *Mathews* in a due process challenge to an immigration exclusion hearing. *Id*.; see *Landon v. Plasencia*, 459 U.S. 21 (1982). More recently, Washington district courts have repeatedly applied *Mathews* to evaluate noncitizens' due process challenges to re-detention decisions. *See*, *e.g.*, *E.A. T.-B. v. Wamsley*, 795 F. Supp. 3d 1316, 1321 (W.D. Wash. 2025) (applying *Mathews* to evaluate the constitutionality of the petitioner's re-detention and collecting cases that employ this test in the context of immigration detention); *Ramirez Tesara v. Wamsley*, 800 F. Supp. 3d 1130, 1135 (W.D. Wash. 2025) (applying *Mathews* to evaluate the constitutionality of the petitioner's re-detention); *Kumar v. Wamsley*, 2025 WL

Respondents argue that Petitioner is not entitled to the protections of the Due Process Clause because his removal proceedings are ongoing, and his re-detention was discretionary. Dkt. # 9 at 5-11. Respondents arguments are unpersuasive. First, Petitioner's original detention was unquestionably mandated by the INA, "[b]ut once an alien enters the country, the legal circumstance changes, for the Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas*, 533 U.S. at 693. Respondents argument that because Petitioner's removal is ongoing ignores that he has been living out of detention for a year and a half at the time of his re-detention. Respondents "fail[] to appreciate the distinction between persons already located inside the United States, like petitioner, and individuals attempting to enter the United States." *Hernandez v. Wofford*, No. 1:25-CV-00986-KES-CDB (HC), 2025 WL 2420390, at *3 (E.D. Cal. Aug. 21, 2025); *Zadvydas*, 533 U.S. at 693 ("It is well established that certain constitutional protections available to persons inside the United States are unavailable to aliens outside of our geographic borders.").

Respondents' argument that because ICE has discretionary power to re-detain Petitioner fails as well. "Although the Supreme Court has described Congress's power over the 'policies and rules for exclusion of aliens' as 'plenary,' and held that this court must generally 'defer to Executive and Legislative Branch decisionmaking in that area,' it is well-established that the Due Process Clause stands as a significant constraint on the manner in which the political branches may exercise their plenary authority"—through detention or otherwise. *Hernandez*, 872 F.3d at 990 n.17 (citing *Kleindienst*, 408 U.S. at 769; *Zadvydas*, 533 U.S. at 695). The executive

---

2677089, *2–3 (W.D. Wash. Sept. 17, 2025) (same); *Ledesma Gonzalez v. Bostock*, 2025 WL 2841574, *7–8 (W.D. Wash. Oct. 7, 2025) (same); *Tzafir v. Bondi*, 2025 WL 3724708, *2–4 (W.D. Wash. Dec. 24, 2025) (same). The Court likewise applies the *Mathews* test here.

ORDER - 5

branch's discretionary power does not allow for a deprivation of constitutional rights in execution of that power.

As Respondents acknowledge, Due Process protections have been applied by this District and our sister jurisdictions under substantially similar facts. *See Shinwari v. Hermosillo,* No. 2:26-CV-00009-RAJ, 2026 WL 262605, at *3 (W.D. Wash. Jan. 30, 2026) (collecting W.D. Wash cases); *Bello Chacon v. Hermosillo*, No. 2:25-CV-02299-TMC, 2025 WL 3562666, at *4 (W.D. Wash. Dec. 12, 2025); *Valencia Zapata v. Kaiser*, 801 F. Supp. 3d 919, 932 (N.D. Cal. 2025); *Pablo Sequen v. Albarran*, No. 25-CV-06487-PCP, 2025 WL 2935630, at *5 (N.D. Cal. Oct. 15, 2025); *Hernandez v. Wofford*, No. 1:25-CV-00986-KES-CDB (HC), 2025 WL 2420390, at *2-3 (E.D. Cal. Aug. 21, 2025). The Court chooses to follow this line of cases. To determine what procedures are constitutionally sufficient to protect Petitioner's due process rights, the Court applies the *Mathews* factors. *See Rodriguez Diaz*, 53 F.4th at 1206.

B.  *Mathews* Factors

   1.  **Private Interest**

The first *Mathews* factor considers "the private interest that will be affected by the official action[.]" *Mathews*, 424 U.S. at 335. Freedom from detention "is the most elemental" of private interests affected by official action. *Hamdi v. Rumsfeld*, 542 U.S. 507, 529 (2004); *see Zadvydas*, 533 U.S. at 690 ("Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects."). So it is unsurprising that even conditional release "is valuable and must be seen as within the protection of the [Due Process Clause]." *Morrissey v. Brewer*, 408 U.S. 471, 482 (1972); *see also Bd. of Pardons v. Allen*, 482 U.S. 369, 377–81 (1987) (recognizing that governmental action can create a liberty interest protected by the Due Process Clause); *Johnson v. Williford*, 682 F.2d 868, 873 (9th Cir. 1982) (same).

Petitioner has a liberty interest in being free from detention, which he is being denied in that he has been detained for months. The interest is only strengthened by the Government's decision to release Petitioner. *See Pablo Sequen v. Albarran*, No. 25-CV-06487-PCP, 2025 WL 2935630, at *5 (N.D. Cal. Oct. 15, 2025) ("Even when the government has discretion to detain an individual, its subsequent decision to release the individual creates 'an implicit promise' that she will be re-detained only if she violates the conditions of her release.") (citing *Morrissey v. Brewer*, 408 U.S. 471, 482, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972)). His release allowed him to "gain[ ] a foothold in the United States" and "develop ties in this country," thereby strengthening his interest in being free from detention. *Pablo Sequen v. Kaiser*, 800 F. Supp. 3d 998, 1009 (N.D. Cal. 2025) (first quoting *Kaplan v. Tod*, 267 U.S. 228, 230 (1925); and then quoting *Landon v. Plasencia*, 459 U.S. 21, 32–33 (1982)) (cleaned up). In revoking Petitioner's release, the Government has undeniably inflicted a "grievous loss" of Petitioner's liberty, thereby depriving him of a core private interest protected by the Due Process Clause. *See Morrissey*, 408 U.S. 471 at 482.

Accordingly, the first *Mathews* factor favors Petitioner.

**2.    Risk of Erroneous Deprivation of Interest Through Procedures Used**

The second *Mathews* factor examines "the risk of an erroneous deprivation of [the petitioner's private] interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards[.]" *Mathews*, 424 U.S. at 335.

Here, as Petitioner was arrested and immediately re-detained without any notice or opportunity to be heard, the risk of an erroneous deprivation of Petitioner's liberty interest is high. It is especially concerning that Petitioner was arrested and detained after a roadside stop, hours away and across state lines from his home when he is only 19 years old, has a special immigrant juvenile (SIJ) finding, and an appointed legal guardian in a different state. *See* Dkt. #

ORDER - 7

1-4 at 5; Dkt. # 11-3 at 2; Dkt. # 1 at 4-5; *see Osorio-Martinez v. Att'y Gen. U.S. of Am.*, 893 F.3d 153, 174 (3d Cir. 2018) ("Because of the rights and benefits they have been accorded, SIJ designees stand much closer to lawful permanent residents than to aliens present in the United States for a few hours before their apprehension.").

Respondents do not make any showing of procedures used, but instead argue that "[t]he existing procedures are constitutionally sufficient" because noncitizens "have no right to a hearing." Dkt. # 9 at 10-11. This is unpersuasive and, as stated, conflicts with holdings of this court. *See Shinwari,* 2026 WL 262605, at *3 (collecting cases). The second factor favors Petitioner.

### 3.   Government's Interest

The third *Mathews* factor contemplates "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews*, 424 U.S. at 335. There is a "heightened government interest in the immigration detention context." *Rodriguez Diaz*, 53 F.4th at 1206.

The government fails to assert any specific interest that would counsel against the Court finding a due process violation. *See* Dkt. # 9 at 10. The Court still acknowledges that the Government likely has an interest in "ensuring the appearance of [noncitizens] at future immigration proceedings" and "preventing danger to the community." *Zadvydas,* 533 U.S. at 690.

It is uncontested that Petitioner has no criminal history and respondents do not claim he is a flight risk. *See generally* Dkt. # 9. Respondents state that Petitioner did not update his address as required under his order of release. Dkt. # 9 at 4; Dkt. # 11-2 at 2. As explained above, Respondents do not argue the relevance of this fact. It is neither clear what address the Government has for Petitioner nor what address the Government challenges. Still, because

Petitioner was active in his immigration proceedings and was otherwise fully compliant with his OREC check-ins, there was no reason to believe he would not appear at future immigration proceedings. *See* Dkt. # 1 at 3-5; *see generally* Dkt. 10.

This *Mathews* factor also favors Petitioner.

\* \* \*

In sum, all three *Mathews* factors favor Petitioner. The Government's re-detention of Petitioner with insufficient notice and no opportunity to be heard violates the due process protections afforded to him by the Constitution. As a result, Petitioner has proven by a preponderance of the evidence that he "is in custody in violation of the Constitution or laws or treaties of the United States" and thus is entitled to habeas relief. 28 U.S.C. § 2241(c).[4]

## IV

### Conclusion

For these reasons, the Court GRANTS the habeas petition at Docket No. 1 and ORDERS that Petitioner be IMMEDIATELY released from custody subject to the same conditions of release that governed before he was re-detained. The Court further ORDERS that Petitioner shall not be re-detained until after a hearing before a neutral decisionmaker and adequate notice of his alleged release violations.

The Clerk is directed to send uncertified copies of this Order to all counsel of record and to any party appearing pro se at said party's last known address.

Dated this 10th day of February, 2026.

---

[4] For this reason, the Court need not address Petitioner's argument that the Government has mischaracterized his case as a § 1225(b) case instead of a § 1226(a) case.

ORDER - 9

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24

*John H. Chun*
John H. Chun
United States District Judge

ORDER - 10